**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A RESIDENCE LOCATED AT 2950 OAK LAKE BLVD, ROOM 302, CHARLOTTE, NORTH CAROLINA 28208 | Case No. 3:20-mj-337<br><br>**AFFIDAVIT** |

I, Robert Stark, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 2950 Oak Lake Blvd, Room 302 Charlotte, North Carolina, 28208**,** further described in Attachment A, for the things described in Attachment B.

2.      I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and have been since March 31, 2016.  I have been a sworn police officer with the Charlotte-Mecklenburg Police Department (CMPD) since 2005 and am currently assigned as a Detective with CMPD's Special Investigations Bureau and ATF Task Force.  I have received training on the local, state, and Federal level including, but not limited to; drug and firearm trafficking and interdiction, search and seizure, confidential informants, proactive investigations; and search warrant preparation and execution.  During my time with CMPD, and particularly in my current assignment, I have participated in numerous state and federal investigations involving the trafficking and possession of illegal drugs and firearms, as well as other violent crimes.  Through my experience in these

investigations, I have conducted dozens of interviews and debriefs with suspects, witnesses, and confidential informants regarding the methods employed by individuals and groups to conduct, document, and conceal their illegal activities.

3.      I have participated in numerous complex investigations involving the illicit trafficking of narcotics and firearms. I have experience in the investigation of violations of both state and federal narcotics laws.  I have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of firearms related offenses, the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking.  I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of telephones, and their use of numerical codes and code words to conduct their transactions.

4.       I am familiar with and have participated in all the normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, and the use of informants and cooperating defendants.  Based upon my training and experience, I am familiar with narcotic traffickers' methods of operation, including the distribution, storage, and transportation of narcotics, and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of such proceeds.  I have conducted investigations regarding the unlawful possession, and distribution of controlled substances in violation of federal and state laws.  I have been the affiant on search warrants and executed search warrants.

5.      The facts set forth in this affidavit come from my personal observations, my training and experience, and information obtained from other witnesses and law enforcement personnel. This

affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## LOCATIONS TO BE SEARCHED

6.     The information contained in this Affidavit is provided for the limited purpose of establishing probable cause in support of search warrants for the "Property to be Searched" located in the Western District of North Carolina:

A. 2950 Oak Lake Blvd, Room 302, Charlotte, North Carolina, 28208, further described in Attachment A, a hotel room occupied by Akeem Olajuwon DAVIS ("DAVIS"), for the items listed in Attachment B.

## PROBABLE CAUSE

7.     The United States, including ATF, is conducting a criminal investigation of Akeem Olajuwon DAVIS regarding possible violations of 21 U.S.C. § 841(a)(1).

8.     In March 2020, Task Force Officers' and Special Agents' with the Alcohol, Tobacco and Firearms ("ATF") and Detectives/Officers with the Charlotte-Mecklenburg Police Department ("CMPD") spoke with a Confidential and Reliable Informant.  The informant informed agents and detectives that Akeem Olajuwon DAVIS is a multiple ounce to kilogram level cocaine Trafficker in Charlotte, North Carolina.  The informant positively identified DAVIS from a single photograph via the CJLEADS system.  The informant also provided law enforcement with DAVIS' phone number - 980-395-1691.  The informant also provided an address of 2512 Finchley Drive, Charlotte, NC 28215 as the location and residence where Akeem Olajuwon DAVIS conducts his narcotics sales and transactions.

9.     The informant also provided information that 2512 Finchley Dr has multiple building and out buildings on the property.  The informant advised that the main structure on the property

which is closest to Finchley Drive is fortified with the doors barricaded and an individual is assigned by DAVIS to be at 2512 Finchley Dr twenty-four hours a day seven days a week. This individual is tasked by DAVIS to conduct narcotic sales in DAVIS's absence. A detached garage described by the informant is behind the main structure and was converted into two separate apartments.

10.     Law enforcement conducted a background investigation on DAVIS. DAVIS has a listed address of 13035 Horned Lark Drive, Charlotte, NC, 28278. DAVIS has been observed by Law Enforcement driving a 2020 Black Dodge Challenger R/T bearing North Carolina license plate number HJD-1430, with vehicle identification number ("VIN") 2C3CDZFJ5LH132763.

11.     Between March 2020 and October 2020, law enforcement officers were able to utilize a confidential informant to contact DAVIS or a co-conspirator on numerous occasions to arrange narcotics transactions at the Finchley Drive Address.

12.     Sometime in early November of 2020, ATF and CMPD used an informant to conduct a controlled purchase of crack cocaine from DAVIS in Charlotte, NC. The informant contacted DAVIS to arrange the crack cocaine purchase, to determine a pre-arranged meeting location, and discuss the timeframe of when the meeting would take place. DAVIS met with the informant at 2512 Finchley Dr and sold the informant an amount of crack cocaine.

13.     On November 18, 2020, Law Enforcement obtained an indictment and arrest warrant in United States District Court, Western District of North Carolina, for the offenses outlined above. CMPD's Violent Criminal Apprehension Team (VCAT) was tasked with locating and arresting DAVIS. As part of the investigation, Law Enforcement previously identified phone numbers 704-222-0851 and 704-838-6703 as belonging to DAVIS, and obtained a Federal Search Warrant for

GPD tracking of both phones. As part of their effort to locate DAVIS, VCAT obtained a state order to use tracking devices in order to triangulate the location for DAVIS' cell phones.

14. On November 19, 2020, VCAT was able to determine through the data obtained in this investigation that DAVIS' phones were located at the Hyatt Place Hotel at 2950 Oak Lake Blvd, Charlotte, NC 28208. DAVIS' 2020 Black Dodge Challenger R/T bearing North Carolina license plate number HJD-1430, with vehicle identification number ("VIN") 2C3CDZFJ5LH132763, was located in the parking lot directly in front of the hotel. DAVIS had made recent phone calls to a subject named Shannon GREEN. VCAT Detectives checked with the Hyatt Place front desk and found that GREEN was staying in room 302. Law Enforcement went to Room 302 and used a handheld tracking device and determined that DAVIS' cell phones were inside the room.

15. VCAT knocked on the door at approximately 6:10 am and located DAVIS inside the room, where he was arrested. GREEN was also located inside the room. During a protective sweep of the room, VCAT located two handguns under the couch cushion in the front portion of the room. VCAT has conducted hundreds of arrest operations and routinely conducts protective sweeps for safety during the course of their arrests. VCAT, on multiple occasions, has found other subjects hiding within refrigerators, closets, furniture, under beds, and under the cushions of pull-out couches like the one in DAVIS and GREEN's hotel room.

16. The handguns, which appear to be semi-automatic pistols, were on the left side of the couch. One of the firearms appears to be a black Glock pistol with an extended magazine and the other appears to be a Ruger pistol with a black slide and pink frame/grip.

17. In addition to the firearms, VCAT Detectives located a small bag of marijuana in the front left pocket of DAVIS' black jacket.

18.     Based on my training and experience, I know that those individuals who distribute illegal narcotics keep records of their sales and customers as well as scales and money counting machines to assist them in their illegal enterprise.  These individuals also utilize cell phones, computers and mobile computer devices (i.e. Ipads, tablets) to communicate through text messages, Facebook Messenger, Snapchat and other forms of communications utilizing these forms of electronic media.

19. Based on my training and experience, I know that it is common for those who engage in the sale of illegal narcotics to possess firearms in furtherance of their drug trafficking crimes.  Persons who sell illegal narcotics possess firearms to protect their residences where the illegal narcotics are being housed.  Persons who possess firearms to protect their drug trade will continually keep the firearms in close proximity to their person in an effort to protect themselves, their illegal narcotics and money obtained from the sale of the illegal narcotics from individuals attempting to steal those narcotics and the money.

20. Based on my training and experience, I know various practices of drug traffickers and manufacturers, including, but not limited to the following:

a.  Drug traffickers and manufacturers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, scanners, papers, and other instruments related to the transportation, ordering, manufacture, distribution, and the sale of controlled substances. The aforementioned books, records, receipts, notes, ledgers, and documents are commonly maintained for long periods of time in locations to which the drug traffickers have ready access, including their homes and businesses.  Traffickers and manufacturers maintain such records to keep lists of their customers and sources of supply, to track which customers are paid in full and which ones owe them money.  Drug traffickers will also

maintain these records on cell phones, computers and mobile computer devices (i.e. Ipads, tablets).

b.  Drug traffickers and manufacturers often secrete proceeds of drug sales and records of drug transactions in secure locations within their residences, automobiles, businesses, and/or on their persons, for ready access and concealment from law enforcement.

c.  Drug traffickers and manufacturers often conceal, in their residences and businesses, significant amounts of United States currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions relating to the obtaining, transferring, secreting or spending large sums of money made from engaging in narcotics trafficking.

d.  Drug traffickers and manufacturers often maintain, for long periods of time, addresses or telephone numbers in cell phones, computers and mobile computer devices (i.e. Ipads, tablets), books, rolodexes, and papers that reflect names, addresses and/or telephone numbers of associates in their drug trafficking and money laundering organization.

e.  Drug traffickers and manufacturers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their narcotics, at meetings with their business contacts and that these drug traffickers usually maintain these photographs in their possession as "trophies," including on their cell phones, computers and mobile computer devices (i.e. Ipads, tablets).

f.  Drug traffickers and manufacturers often possess packaging materials, scales, firearms, and other drug trafficking paraphernalia.

21.     Narcotics traffickers maintain in their residence and/or business establishments computerized or written books, records, receipts, diaries, note ledgers, airline tickets, cashier's checks, money order, and other papers relating to their criminal activities.

22.     Narcotics traffickers and person involved in criminal activities commonly conceal contraband, proceeds derived from illegal activity, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of co-conspirators within their residence and/or place of business, their business vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies.

23.     Leaders of narcotics distribution commonly maintain records reflecting names, nicknames, addresses, and telephone numbers of both their current and past associates.

24.     Criminal organizations and persons involved in criminal activities that are aware of an ongoing investigation, will often destroy an existing format of records reflecting the illegal activities (i.e., names of associates who owe them money and amounts of monies owed and collected). However, it is common for members of an organization to create another type of record after destroying one type of record to assist in the continued collection of money derived from illegal activities.

25.     Criminal organizations and persons involved in criminal activities will commonly conceal within their vehicles, residence or businesses, or within the curtilage of their residence or businesses, large amounts of currency, firearms, financial instruments, precious metals, precious gemstones, jewelry, electronic equipment, and other items of value and/or proceeds derived from illegal activities and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from criminal activities.

26.    Criminal organizations and persons involved in criminal activities often have photographs or video movies of themselves, their co-conspirators, and the property and assets purchased with illegal proceeds.  These photographs and video movies are normally in the member's possession, their residence, and/or their place of business.

27.    Narcotics traffickers often correspond to each other utilizing mail, letters, "kites", or other written means through postal services, prison facilities, prison visitations, and often keep those materials, letters, records, and such for use in planning criminal activities or maintaining control of the narcotics distribution.

## CONCLUSION

28.    Based upon the foregoing information, the affiant submits that there is probable cause to believe that within the previously identified and described premises there is evidence of criminal activity, evidence, fruits, instrumentalities of the criminal violations specified herein, to include Title 18 U.S.C. § 922 (g)(1) (Possession of a Firearm by a Convicted Felon) and Title 21 U.S.C. § 841 and 846 (distribution of narcotics and conspiracy to distribute narcotics).

Respectfully submitted,

//s// Robert M. Stark

_____

Robert M. Stark
Task Force Officer
Alcohol, Tobacco, Firearms and Explosives
(ATF)

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 19th day of November, 2020, at 10:18 AM

Signed: November 19, 2020

_____

David S. Cayer
United States Magistrate Judge

## ATTACHMENT A

## 2950 OAK LAKE BLVD, ROOM 302, CHARLOTTE, NC 2808

This is a multi-story, multi-room hotel located on Oak Lake Blvd near Yorkmont Rd in Charlotte, North Carolina. The hotel is doing business as the Hyatt Place Hotel, and is constructed of white and tan stucco. The hotel has a covered front entrance with the numerals "2950 displayed on the top of the covered entrance and "Hyatt Place" is affixed to the top middle of the exterior of the hotel. Room 302 is on the third floor of the hotel and designated with the numerals "302" on a placard affixed to the right of the door.



# **Attachment B**

# **Items to be seized**

1. Narcotics, and drug paraphernalia used in the distribution, packaging and selling of narcotics.

2. Firearms and firearms parts and ammunition

3. Photographs that depict gang involvement or gang membership. Photographs that depict acts of violence, victims of violent crime, or locations where crimes have occurred.

4. Currency or currency transaction records, which has been received or derived from narcotics activity.

5. Documents or writings, which describe or identify assets that have been acquired through the proceeds of criminal activity, as well as the assets themselves. Documents, writings, correspondence or letters including "jail mail" from gang members.

6. Telephone records, which may provide information regarding the identity other members of the narcotics trade and other individuals that may have performed acts of violence.

7. Weapons, including but not limited to: sharp-edged weapons.

8. Cellular telephones, to include a search of said items for any numbers, messages, or information contained therein which are related to the operation of the drug business, firearms, and gang indicia.

9. With regard to any cellular telephones seized, all stored electronic evidence, such as but not limited to text messages, email, address books, phone numbers, photographs, video, call logs, and voicemail.

   a. Any and all communications between the user(s) of the Devices and any suspects related to the sale, purchase, and or distribution of narcotics, possession of firearms, and the gang enterprise and or crimes related to the gang enterprise;

   b. Any and all communications between the user(s) of the Devices related to the sale, purchase, and or distribution of narcotics, possession of firearms, and the gang enterprise and or crimes related to the gang enterprise;

   c. Evidence indicating the Device account owner/user's state of mind as it relates to the crimes under investigation;

   d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

e. Evidence of communications amongst the victim and others, and between coconspirators and unwitting individuals.

f. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

g. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

10. Court discovery paperwork, news releases, press materials specific to criminal activity or acts of violence.

11. All electronic equipment used to gain access to the Internet for the purpose of conducting research and save data related to the sale, purchase, and or distribution of narcotics, possession of firearms, and the gang enterprise and or crimes related to the gang enterprise such as computers, tablets, USB drives and or other electronic storage devices.

12. Any and all communications between the user(s) of the Devices related to the sale, purchase, and or distribution of narcotics, possession of firearms, purchase of PII, the use of PII, and creation of financial accounts utilizing other individual's PII, and the gang enterprise and or crimes related to the gang enterprise;

13. Evidence indicating the Device account owner/user's state of mind as it relates to the crimes under investigation;

14. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

15. Evidence of communications amongst the victim and others, and between coconspirators and unwitting individuals.

16. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

17. Photographs, videotapes, or other audio or pictorial media showing co-conspirators.

18. Records, including but not limited to address books, phone books, and lists of phone numbers, and Dues Records and billings.

19. Evidence or records of cohabitation by other narcotics traffickers.